UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRUCE DEAN ROBINETTE,

    Plaintiff,

v.                                                             Case No:   2:17-cv-413-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Bruce Dean Robinette, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed an application for a period of disability and DIB on November 12, 2013, alleging a disability onset date of July 22, 2011. (Tr. 153-58, 244). Plaintiff's claims were denied at the initial and reconsideration levels. Plaintiff requested a hearing, and, on November 13, 2015, an administrative hearing was held before Administrative Law Judge Julia D. Gibbs ("the ALJ"). (Tr. 30-76). On April 28, 2016, the ALJ entered a decision finding that Plaintiff was not under a disability from July 22, 2011, through the date of the decision. (Tr.17-29). Plaintiff filed a request for review which the Appeals Council denied on May 19, 2017. (Tr. 1-6). Plaintiff initiated this action by filing a Complaint (Doc. 1) on July 21, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 22, 2011, the alleged onset date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthrosis in the knees, spine disorders, shortness of breath, obesity, and asthma. (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 20). At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work as a building inspector. (Tr. 23).

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in the national economy in significant numbers that Plaintiff can perform. (Tr. 23-24). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform the job code inspector. (Tr. 24). The ALJ concluded that Plaintiff was not under a disability from July 22, 2011, through the date of the decision, April 28, 2016. (Tr. 24).

## II.     Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ properly considered the treating physician opinion; (2) whether the ALJ properly assessed Plaintiff's RFC; and (3) whether the ALJ properly evaluated Plaintiff's subjective complaint of pain and other symptoms.

The Court begins with the first issue raised by Plaintiff. Plaintiff argues that the ALJ erred by assigning "little weight" to the opinion of treating physician Jonathan Daitch, M.D. (Doc. 21 p. 11-20). Plaintiff contends that the ALJ's reasons for assigning the opinion "little weight" do not establish the requisite good cause as required by law. In response, Defendant argues that decision to assign little weight to Dr. Daitch's opinion was supported by substantial evidence. (Doc. 21 p. 21-24). Defendant contends that Plaintiff's argument regarding the ALJ's evaluation of Dr. Daitch's opinion is nothing more than re-weighing the evidence in disguise. (Doc. 21 p. 23).

The medical record pertinent to Dr. Daitch's opinion shows that Plaintiff underwent total left knee replacement on February 6, 2011, due to left knee osteoarthritis; he also has osteoarthritis in his in his right knee and received an injection for that on the same date. (Tr. 433). Shortly after

his operation, he was diagnosed with acute deep vein thrombosis without compressibility in the lower level of the left soleal vein; he experienced pain and swelling of his left lower extremity as a result. (Tr. 432).

Eight and a half months after his left knee replacement, Plaintiff reported that he had minor discomfort and stiffness but had returned to all activities. (Tr. 299). An examination of his left knee showed that he walked with minimal pain, had "excellent" range of motion, and full stability. (Tr. 300-01). An examination of his right knee showed that he walked with minimal to moderate pain in his left knee and his range of motion was excellent. (Tr. 301). Swelling was observed and moderate pain was elicited on full and passive range of motion, which was decreased; Plaintiff was tender to palpitation at the medial joint, femoral joint (with crepitus, and pes tendons), and moderate effusion was present. (Tr. 300). An x-ray demonstrated moderately narrowed joint space, moderate osteophytes, and moderate sclerosis. *Id*.

On November 7, 2011, following a 7000-mile motorcycle trip, Plaintiff complained of right sided thoracic pain that extends to the lower back flank area, and complained of tingling localized to the heel. (Tr. 303). On examination, Plaintiff walked with a normal gait. (Tr. 304). Plaintiff experienced right sided pain to palpitation, and he was diagnosed with a muscle strain. (Tr. 305). On February 19, 2013, imaging revealed two degrees of levoscoliosis in the lower dorsal level and mild multilevel degenerative changes in the thoracolumbar spine. (Tr. 362). He received a diagnostic sacroiliac joint injection two days later. (Tr. 409).

Plaintiff reported aching, sharp, and sore knee pain that was aggravated by walking and standing, but relieved by pain medications on March 18, 2013. (Tr. 319). Previously attempted median branch blocks did not help and Plaintiff began experiencing headaches, rashes, and nausea from Fentanyl patches. *Id*. He had failed all prior conservative care; current pain level was 8/10;

taking allopurinol, Aleve, Duragesic, Opana, and Vicodin. *Id*. Plaintiff also reported wrist and hand pain. *Id*. Upon physical examination, Plaintiff's gait was normal and he could heel and toe walk normally. (Tr. 320). He had normal muscle tone and no spasm. (Tr. 320). The physician noted tenderness over the bilateral sacroiliac joint; lumbar motion was painful on extension and lateral bending. (Tr. 320). Plaintiff had a negative straight leg raising test and his lumbar range of motion was pain free. (Tr. 320). However, the examination also reflected that moderate pain was exhibited on rotation of the lumbar spine, and his rotation was limited. (Tr. 321). It was noted that Plaintiff had positive sacral compression, distraction, and AP thrust test. *Id*. It was medically necessary for him to receive opiate therapy for more than 72 hours. *Id*. He was assessed as having lumbosacral spondylosis, with an MRI for probable discogenic pain and sacroilitis. *Id*. He received a peripheral nerve block. (Tr. 322).

An April 1, 2013 lumbar spine MRI revealed a transitional S1 vertebral body, small focal central protrusion at L5-S1 and facet disease with moderate bilateral neural foraminal stenosis, and shallow central protrusion at L4-5. (Tr. 361). Plaintiff's back pain was constant, aching, and stabbing, but stable; it was aggravated by lifting, lying down, and breathing, but relieved by pain medications on April 8, 2013. (Tr. 329). His knee pain was severe and worsening; the pain was described as a severe grinding, which was aggravated by climbing and descending stairs, walking, and standing; it was relieved by rest, stretching, and pain medications. *Id*. He also experienced hand pain, which was moderate to severe in nature, constantly occurring and worsening; it radiated to his fingers and was aching and sharp, aggravated by movement and use of the hands. *Id*. The pain is relieved by pain medication. (Tr. 329). An examination was performed but not was not transcribed. (Tr. 329). Plaintiff was diagnosed with tenderness of the thoracic spine and rib. (Tr.

326). Despite being recommended and requested by Dr. Daitch, thoracic epidural injections were not covered by Plaintiff's insurance. (Tr. 398).

Plaintiff returned to Dr. Daitch on May 13, 2013, still experiencing back, hand, knee, and neck pain; he was diagnosed with lumbosacral thoracic radicular pain, lumbosacral spondylosis, and osteoarthritis leg; knee. (Tr. 218). He reported that his prescribed Opana made him groggy, but he was having insurance problems. (Tr. 331). A review of systems revealed extremity weakness and gait disturbance, as well as joint pain, swelling, muscle weakness, and arthritic manifestations. (Tr. 332). On examination, Plaintiff's gait was normal and he heel and toe walked normally (Tr. 333).

A body scan due to lumbosacral and thoracic radicular pain was conducted on June 12, 2013, revealing scattered areas of mild benign degenerative uptake to the mid-to-lower thoracic spine; additional areas of benign degenerative uptake involving the shoulders, costochondral junctions, right knee, feet, and ankles were observed. (Tr. 359). An MRI of the thoracic spine revealed small thoracic disc protrusions with some minor distortion of the spinal cord at D8-9 and on the right at D6-7. (Tr. 360). Plaintiff had back pain that occurred constantly and fluctuated, radiated to his legs and knees, and was achy and sharp on June 13, 2013. (Tr. 338). It remained aggravated by bending, climbing stairs, walking, standing, and daily activities; it was relieved by lying down and pain medications. *Id*. He had experienced no significant relief in his back pain on August 8, 2013, and though it was indicated that pain medication as controlling his pain adequately, Plaintiff still had a pain level of 7 out of 10. Tr. 340. Though Plaintiff's back pain was stable on October 3, 2013, it had only improved to a pain level of 6 out of 10, and was associated with deep, aching, sharp, and shooting pain in his back and legs that was aggravated by daily activities. (Tr. 342). Plaintiff reported that medications adequately controlled his pain. (Tr. 342).

A review of systems was positive for back pain, joint pain, and arthritic manifestations. *Id*. On examination, Plaintiff had a normal gait and he could heel and toe walk normally. (Tr. 343). Tenderness observed over the bilateral sacroiliac joint; lumbar motion was painful on extension and lateral bending; limited ROM due to pain. *Id*. Plaintiff was prescribed Norco for his pain. (Tr. 344). Plaintiff's back and knee pain constantly bothered him, with no improvement of symptoms on January 27, 2014. (Tr. 350). A physical examination revealed and normal gait and tenderness over the sacroiliac joint; lumbar motion painful on extension and lateral bending. (Tr. 351).

While Dr. Daitch noted Plaintiff's pain score and ability to perform activities of daily living had improved with medication on April 4, 2014, his pain increased to an 8 of 10. (Tr. 379). Plaintiff's gait was normally and he could heel and toe walk normally. (Tr. 380). Tenderness over the sacroiliac joint was observed bilaterally, with painful motion on extension and lateral bending and decreased hip range of motion; he was prescribed Opana in addition to Norco. (Tr. 380-81). Plaintiff's back and knee pain persisted on May 29, 2014, and he exhibited mild pain with motion of the bilateral knees. (Tr. 629-30). On July 24, 2014, Plaintiff's back and knee pain fluctuated, and his back pain radiated to the hips; it was described as an aching pain that was aggravated by walking and standing, but relieved by rest. (Tr. 632). He reported a pain level of 6 of 10. *Id*. A review of systems was positive for back and joint pain, as well as arthritic manifestations. (Tr. 634). He exhibited tenderness over the bilateral lumbar facet joints, and lumbar motion was painful. *Id*. His hip range of motion was decreased. (Tr. 634-35).

In a recheck of his painful kidney stones on August 20, 2014, he was noted to use a cane, and experience difficulties with arthritis and back pain. (Tr. 482). He was noted to use a cane at subsequent appointments in August, September, and October at his urologist for kidney stone monitoring. (Tr. 467-68; 476; 505). Plaintiff experienced lumbosacral thoracic radicular pain and

osteoarthritis in the back, bilateral shoulders, wrists, hands, hips, and knees on September 18, 2014. (Tr. 636). The pain he experienced was persistent and was sharp and achy; it was aggravated by bending, overuse, using his hands, gripping objects, changes in weather, and moving wrong, but relieved by prescription medication. *Id*. His pain level remained a 6. *Id*. Plaintiff complained of back pain that was 7 out of 10 on November 13, 2014; it was noted that he had failed conservative care. (Tr. 640). The treatment note reflects that Plaintiff's current medication has "greatly improved" his life and activities of daily living. (Tr. 640). A physical examination revealed decreased hip range of motion and pain with lumbar motion. (Tr. 642). Despite heavy narcotic medication, Plaintiff's back pain had only reduced to a 6 of 10 on January 8, 2015; the intensity, character, and location of the pain remained unchanged. (Tr. 644). He had a decreased hip range of motion, tenderness over bilateral lumbar facet joints and pain on extension and lateral bending; decreased hip range of motion. (Tr. 646). Plaintiff was prescribed Norco 10 every 4 hours, in addition to Aleve and Allopurinol 300 mg. (Tr. 647).

On February 19, 2015, Dr. Daitch planned to start with diagnostic facet median nerve branch blocks, up to a series of two; if there was temporary relief, he would proceed with radiofrequency denervation of the facet joints. (Tr. 648). Plaintiff reported pain at a level of 8/10 that was sharp. *Id*. Right facet tenderness was observed on palpitation, as well as pain on extension and lateral bending; decreased range of motion of lumbar spine, hips, and knees (pain free active range of motion in knees). (Tr. 650). Spinal stenosis was revealed on imaging on March 5; Plaintiff reported a pain level of 6 out of 10, which had increased in intensity since his last visit. (Tr. 652). His pain was aggravated by bending, twisting, and daily activities; it was worse in the morning. *Id*. Upon examination, Plaintiff had bilaterally positive straight leg raises. (Tr. 654). His gait was antalgic, bilaterally broad-based, and he was unable to heel-and-toe walk normally. *Id*. Mild to

moderate spasms were observed intermittently, and tenderness to palpitation was noted on the lumbar and sacral spines; motion was with pain. *Id*. His bilateral buttocks were painful. *Id*. His hips exhibited decreased range of motion, and a neurovascular examination of the lower extremities were within normal limits except for patchy decreases in sensation bilaterally. *Id*. Plaintiff received lumbar medial branch blocks several weeks later. (Tr. 656). The next month, Plaintiff reported a 70% improvement in pain after the injection, though it still persisted. (Tr. 658). Lumbar range of motion remained decreased, with increased paraspinous muscle tone, and tenderness over the bilateral lumbar facet joints, as well as a decreased range of motion in both the knees and hips. (Tr. 660-61). He had a similar examination with stable pain on June 24, 2015. (Tr. 662-64). In August 2015, Plaintiff's back pain persisted, and the pain radiated to the dermatome anteriorly; he again exhibited tenderness over the bilateral lumbar facet joints and lumbar motion painful on extension and lateral bending; and an abnormal range of motion in the hips and knees. (Tr. 666-68). Appointments in August and September with the Florida Heart Associates revealed diagnoses of gout, osteoarthritis, kidney disease, deep vein thrombosis after knee surgery, scoliosis, sleep apnea, chest pain, and dyspnea, as well as an abnormal EKG. (Tr. 680; 690).

On December 4, 2015, Dr. Daitch submitted a medical opinion regarding Plaintiff's ability to do work-related activities. (Tr. 717). Dr. Daitch opined that Plaintiff could lift up to 10 pounds on an occasional basis, and less than 10 pounds frequently; he can stand and walk about 2 hours in an 8-hour day, but needs, and assistive device to do so, and can sit about 2 hours in an 8-hour day. (Tr. 117-18). He can sit and stand for about 30 minutes prior to changing positions, and must walk around every 30 minutes for 10 minutes at a time, and requires a position that allows him to change positions at will. *Id*. Plaintiff will need to lie down twice during an 8-hour shift due to severe neck pain, morbid obesity, and knee osteoarthritis. *Id*. Exacerbation of his pain would likely

cause him to be absent from work more than 4 days per month. (Tr. 718). His pain and other symptoms are severe enough to frequently interfere with his attention and concentration to perform even simple work-related tasks. *Id.*

In her decision, the ALJ explained the weight she accorded Dr. Daitch's opinion as follows:

> The undersigned has limited the claimant to light work based on the evidence of record as discussed herein. Specifically, the claimant has generally rated his pain level a 4 to 6 out of 10 in severity. Moreover, Jonathan Daitch, M.D., a pain specialist, indicated in August 2015 that the claimant's "ability to perform activities of daily living are greatly improved with [his] medication regimen."
>
> Accordingly, the undersigned gives little weight to Dr. Daitch's determination in December 2015 that the claimant is able to stand or sit 2 hours, and needs to lie down 2 hours a day due to severe neck pain and obesity. The record does not support this level of exertional restriction.

(Tr. 22-23) (internal footnote citations omitted).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ erred by failing to properly consider the opinion of Dr. Daitch. As Plaintiff notes, Dr. Daitch is the only doctor to have actually examined Plaintiff and offered an opinion with respect to his work-related limitations. Despite being the sole treating physician opinion in the record, the ALJ's decision includes only a brief summarization of Dr. Daitch's opinion, specifically addressing only Dr. Daitch's opinion concerning Plaintiff's ability to stand and sit and need to lie down. Citing *Dyer v.* Barnhard, 395 F.3d 1206, 1211 (11th Cir. 2005), Defendant contends that although the ALJ did not explicitly consider and assign weight to every part of Dr. Daitch's opinion, this failure does not warrant remand as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." (Doc. 21 p. 22). In *Dyer*, the court found that the ALJ's failure to specifically reference that the claimant was prescribed a painkiller a single time was inconsequential to the ALJ's decision. Here, however, the ALJ failed to discuss in detail the opinion of a treating physician which is entitled to great weight unless good cause is shown to the contrary. The ALJ's cursory consideration of Dr. Daitch's opinion fails to satisfy *Winschel*'s requirement that the ALJ state with particularity the weight assigned to opinion evidence.

Further, the Court rejects Defendant's argument that the ALJ provided good cause for rejecting Dr. Daitch's opinion. Courts in the Middle District of Florida have held that stating that a doctor's opinions are inconsistent with the record, without more, does not provide the good cause required to afford them little consideration. *Hourihan v. Comm'r of Soc. Sec.*, 2013 WL 1174958, at *5 (M.D. Fla. Mar. 20, 2013) (citing *Kahle v. Comm'r of Soc. Sec.,* 845 F.Supp.2d 1262, 1272 (M.D. Fla. 2012) (ALJ did not articulate good cause for rejecting the consultative examining doctor's opinion where the ALJ conclusorily stated that the consultative examining doctor's opinion was inconsistent with the record); *Rosario v. Comm'r of Soc. Sec.,* 2012 WL 2589350, at *14 (M.D.Fla.2012) (reversing the ALJ's decision where the ALJ gave medical opinions less than controlling weight based on the conclusion, without more, that they were inconsistent with their own exam records). In this case, the ALJ rejected Dr. Daitch's opinion on the basis that his findings were not supported by the record. The ALJ, however, failed to perform an analysis demonstrating how Dr. Daitch's opinion was inconsistent with the record.

In the joint memorandum, Defendant cites to numerous examples of evidence it argues supports the ALJ's determination that Dr. Daitch's opinion was inconsistent with the record. Defendant's argument, however, constitutes a post hoc rationalization upon which the Court will not rely. *See, See, e.g., Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (finding that a court will not affirm based on a post hoc rationale that might have supported the ALJ's conclusion). Upon remand, the Court will require the ALJ to conduct a thorough analysis of Dr. Daitch's opinion, weigh the opinion, and provide the reasons for the weight accorded the opinion.

As the ALJ's error in considering Dr. Daitch's opinion affect the ultimate RFC finding, the Court will refrain from addressing Plaintiff's other raised issues at this time.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties